SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
------------------------------------------------------------------ X
OLYMPUS AMERICA INC.,

                       Plaintiff,

           -against-

BRACCO DIAGNOSTICS INC. and
UNITED STATES ENDOSCOPY GROUP, INC.,

                       Defendants.
------------------------------------------------------------------ X

Index No.:

Date Purchased: April 1, 2016

**SUMMONS**

Plaintiff designates Suffolk County (Plaintiff's County of residence) as the venue of trial. C.P.L.R. 503(a).

To the above-named Defendants:

      YOU ARE HEREBY SUMMONED and required to serve upon the above-named Plaintiff's attorneys an answer to the Complaint in this action within twenty (20) days after the service of this Summons, exclusive of the day of service, or within thirty (30) days after service is complete if this Summons is not personally delivered to you within the State of New York.

      PLEASE TAKE NOTICE that, in case of your failure to answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated:     Garden City, New York
             March 31, 2016

                              MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
                              *Attorneys for Plaintiff Olympus America Inc.*

                              By: _____*s/ Daniel B. Rinaldi*_____
                                  Daniel B. Rinaldi
                              990 Stewart Avenue, Suite 300
                              P.O. Box 9194
                              Garden City, New York 11530-9194
                              (516) 741-6565

To:    Bracco Diagnostics Inc.
        259 Prospect Plains Road, Building H
        Monroe Township, New Jersey

        United States Endoscopy Group, Inc.
        5976 Heisley Road
        Mentor, Ohio 44060

1109734

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
------------------------------------------------------------------ X
OLYMPUS AMERICA INC.,

                              Plaintiff,

                -against-                    **VERIFIED COMPLAINT**

BRACCO DIAGNOSTICS INC. and              Index No.:
UNITED STATES ENDOSCOPY GROUP, INC.,

                            Defendants.
------------------------------------------------------------------ X

The plaintiff, Olympus America Inc. ("Olympus"), by its attorneys, Meyer, Suozzi, English & Klein, P.C., as and for its verified complaint against the defendants, Bracco Diagnostics Inc. ("Bracco") and United States Endoscopy Group, Inc. ("U.S. Endoscopy"), states as follows:

## THE PARTIES

1. At all times hereinafter mentioned, Olympus was and still is a corporation duly organized and existing under the laws of the State of New York, and was and still is incorporated in the County of Suffolk.

2. At all times hereinafter mentioned, Bracco was and still is a Delaware corporation that maintains its principal place of business at 259 Prospect Plains Road, Monroe Township, New Jersey.

3. At all times hereinafter mentioned, U.S. Endoscopy was and still is an Ohio corporation that maintains its principal place of business at 5976 Heisley Road, Mentor, Ohio.

4. Upon information and belief, Bracco and U.S. Endoscopy transact business in the State of New York.

## THE FACTS

5. Olympus is in the business of, among other things, selling and leasing endoscopy equipment to doctors, hospitals, and other health care providers throughout the United States, including New York.

6. Olympus also is in the business of buying and distributing products called "polyp traps."

7. Polyp traps are small, disposable accessories doctors, hospitals, and other health care providers use in conjunction with endoscopy equipment (such as endoscopes) to remove or retrieve tissue identified as a polyp so as to require biopsy or closer examination.

8. Bracco is in the business of developing, manufacturing, marketing, and selling polyp traps.

9. In or around October of 2009, Bracco and Olympus entered into an agreement titled "Distribution Agreement."

10. Under the terms and conditions of the Distribution Agreement, Bracco agreed to sell, and Olympus agreed to buy, what the Distribution Agreement terms the "Products" for distribution to Olympus's end-user customers.

11. The initial term of the Distribution Agreement was "four (4) years from the Effective Date," *i.e.*, October of 2009.

12. Exhibit A to the Distribution Agreement defines the "Products" to mean the two types of polyp trap listed in Exhibit C to the Distribution Agreement: the "4 Chamber Polyp Trap" and the "Quick Trap."

13. Olympus's end-user customers use polyp traps as accessories to the endoscopy equipment sold or leased to them by Olympus.

2

14. Under the terms and conditions of the Distribution Agreement, Olympus had the right to market, sell, offer for sale, and distribute Bracco's polyp traps in the "Territory" designated in the Distribution Agreement.

15. Exhibit A to the Distribution Agreement initially defined "Territory" to mean the geographic areas listed in Exhibit B to the Distribution Agreement, namely, "North America" and "Latin America."

16. Starting in October of 2009, and continuing until March 15, 2016, Bracco and Olympus conducted business pursuant to the Distribution Agreement without any serious incident or dispute.

17. On June 30, 2011, Bracco and Olympus executed "Amendment No. 1" to the Distribution Agreement, which extended the "Territory" in which Olympus could sell Bracco's polyp traps from North and Latin America to "worldwide" (excluding "Austria and Italy and jurisdictions in which Bracco has granted third-parties exclusive rights").

18. On December 17, 2014, Bracco and Olympus executed "Amendment No. 2" to the Distribution Agreement, pursuant to which the Distribution Agreement was extended beyond the first potential "termination" period (*i.e.*, October of 2013) to December 31, 2016.

19. In 2015, Olympus purchased approximately $2.6 million in "Products" from Bracco and sold approximately $2.2 million in "Products" to its U.S. customers alone.

20. Olympus sells approximately 15,000 polyp traps per week to its customers worldwide.

21. In December of 2015, Olympus became aware that a competitor, U.S. Endoscopy, had acquired Bracco's gastroenterology business unit, which included Bracco's manufacturing of "devices for biopsy collection." Olympus learned this information via a letter, dated December

3

17, 2015, which U.S. Endoscopy apparently sent to its own "Valued Customers," some of whom were customers with which Olympus also did business.

22. By letter dated February 16, 2016, Ben Kingery, the "Director, National Accounts" for U.S. Endoscopy, directly advised Olympus as follows:

> Dear OLYMPUS AMERICA,
>
> US Endoscopy acquired the Gastroenterology Business Unit of Bracco Diagnostics on December 17th, 2015. Please reference the attached press release for additional details.
>
> Beginning March 14th, 2016 all Bracco Diagnostics GI products will be ordered directly through US Endoscopy. Although we greatly appreciate the partnership you have provided to the Bracco team, the US Endoscopy structure does not require distributor support moving forward.
>
> Orders can be placed directly through Bracco until Friday, March 11th, 2016. If you have Customers that would like to place orders after this date, please direct them to US Endoscopy. Our Customer Service team is available from 8 a.m. EST, Monday through Friday.
>
> Phone:      440.639.4494
> Toll-Free:  800.769.8226
> Fax:        440.639.4495
>
> We thank you for your understanding.

23. Mr. Kingery's letter made no reference to the Distribution Agreement between Bracco and Olympus.

24. By letter dated March 15, 2016, which was sent the day after U.S. Endoscopy advised Olympus in its February 16, 2016 letter that "all [Bracco] products will be ordered directly through US Endoscopy," Bracco's President and Chief Executive Officer, Vittorio Puppo, notified Olympus that it was terminating the Distribution Agreement:

> We have been informed that, on March 1, 2016, Olympus Corp. of the Americas ("OCA") was charged in a criminal complaint in federal court with conspiracy to violate the Anti-Kickback Statute (the "AKS"), which prohibits payments to induce purchases paid for by federal health care

4

companies. In connection with this complaint, OCA (on behalf of itself and certain of its subsidiaries, including Olympus America Inc.) entered into a three-year the [sic] Deferred Prosecution Agreement and Attachments thereto, (collectively the "DPA") with the United States Department of Justice that will allow it to avoid conviction if it complies with the reform and compliance requirements outlined in the agreement. As a result of the conduct outlined in the government's criminal complaint and DPA, OCA has agreed to pay a $312.4 million criminal penalty and an additional $310.8 million to settle civil claims under the federal and various state False Claims Acts, which, according to the government, is the largest total amount paid in U.S. history for violations involving the AKS by a medical device company. As part of the settlement, OCA admitted that the criminal complaint against it, which charged, among other things, that OCA won new business and rewarded sales by giving doctors and hospitals kickbacks, is true. Olympus Latin America Inc., a subsidiary of OCA, will pay $22.8 million to resolve criminal charges relating to the Foreign Corrupt Practices Act (the "FCPA") in Latin America.

Bracco does not tolerate improper financial relationships between distributors of its products and health care providers. The violation by OCA and its subsidiaries of the AKS, various state False Claims Acts and the FCPA is a material breach of the Distribution Agreement. Those acts of material breach include, but are not limited to, the following:

- Violation of Section 5(a) of the Distribution Agreement, which provides in material part: "**Compliance.** BRACCO and Distributor shall comply with all Applicable Laws, including without limitation those that apply to the marketing and sale of the Products, . . ." ("Applicable Laws" as specifically defined in Exhibit A, "Defined Terms" of the Agreement).

- Violation of Section 5(b) of the Distribution Agreement, which provides in material part: "**Authorizations.** ". . . Distributor specifically acknowledges that certain Products are or may be subject to export and re-export controls imposed by U.S. Export Controls. Distributor undertakes and agrees to comply at all times with Applicable Laws, including the U.S. Export Controls, with respect to all Products and any associated services and, without the prior written consent of BRACCO, neither Distributor nor any of its employees, representatives or agents shall (a) export, re-export, divert, transfer or otherwise permit the delivery of any Product to any destination, company or person restricted or prohibited by U.S. Export Controls,

5

> or (b) disclose any technical data derived from any Product or any direct product thereof when such disclosure is restricted or prohibited by U.S. Export Controls...." ("Applicable Laws" and "U.S. Export Controls" as specifically defined in Exhibit A, "Defined Terms" of the Agreement).
>
> - Violation of Section 5(b) of the Distribution Agreement which provides in material part: "**Authorizations.** "... Within ten (10) days after each anniversary of this Agreement, Distributor shall provide the following certification to BRACCO, duly signed by the authorized office of Distributor: 'Distributor hereby certifies to BRACCO DIAGNOSTICS INC. that for the year immediately preceding the date of this certificate, neither it nor any of its employees, representatives, or agents has engaged in or participated in any transaction or conduct prohibited by the Distribution Agreement between Distributor and BRACCO DIAGNOSTICS INC.'" Since the inception of the Agreement on October 8, 2009, Olympus has failed to provide any of the six (6) annual certifications required, which would have been due on or about October 18, 2010, 2011, 2012, 2013, 2014 and 2015 and, due to the criminal violations summarized above, would not have been able to deliver the required certificates.
>
> Section 5(b) further provides that "Any breach of Distributor's obligations hereunder shall be deemed to be a **material breach** of this Agreement and **constitute cause** for purposes of BRACCO's termination of this Agreement." (Emphasis added.)
>
> Pursuant to Section 11(b) (Termination For Material Breach) of the Distribution Agreement, this letter constitutes notice of termination by Bracco of the Distribution Agreement for material breach. Because the material breach is not curable, this termination shall be immediately effective.
>
> Accordingly, please consider the referenced Agreement terminated and of no further force and effect.

(Emphasis in the original.)

6

25. The same day (March 15), Bracco rejected a purchase order from Olympus, dated March 8, 2016, despite the fact that it was submitted well before the March 14 cut-off date in U.S. Endoscopy's letter of February 16, 2016.

26. In response, Adam Falkowitz, Olympus's Deputy General Counsel, sent a letter, dated March 18, to Mr. Puppo, which stated, in relevant part, the following:

> As an initial matter, <u>Olympus did not breach the Distribution Agreement</u>. Bracco's attempt to classify a settlement agreement that Olympus reached with the United States Department of Justice ("DOJ"), covering conduct DOJ contends occurred from 2006 – 2011 as a "material breach" of the Distribution Agreement simply has no legal effect. None of the settled conduct was connected, associated, or tied in any way to Olympus' interactions with Bracco. The settled conduct has likewise not harmed or injured. Bracco in any respect. It is surprising that Bracco is claiming that Olympus' settlement of a government investigation triggered a breach of the Distribution Agreement, considering Bracco's parent company, Steris, has itself entered into similar types of settlements with the United States government. *See, e.g.*, Consent Decree of Permanent Injunction between United States and Steris Corporation, announced April 20, 2010 (stopping Steris from distributing unapproved and misbranded devices used to sterilize heat-sensitive instruments and medical devices in violation of the Federal Food, Drug, and Cosmetic Act).
>
> While we appreciate Bracco's creativity in attempting to justify the improper termination of the Distribution Agreement and rejection of a valid Purchase Order, Olympus is willing to forgo its rights and remedies under the Distribution Agreement for Bracco's anticipatory breach if Bracco agrees to: (1) perform as agreed under Section 11(d) to the Distribution Agreement for the next one hundred and twenty days; and (2) enable Olympus to purchase the Annual Forecast as prescribed in Section 11(f) to the Distribution Agreement.
>
> If Bracco fails to respond to this demand in writing <u>within three (3) business days</u> that it will perform as required under Sections 11(d) and 11(f) to the Distribution Agreement, fulfilling any purchase order submitted by Olympus in accordance therewith, Olympus will be forced to take further action, as appropriate. With this communication, Olympus expressly reserves all possible rights, whether at law or equity. Please feel free to contact me with any questions.

(Emphasis in the original.)

7

27. Mr. Puppo wrote back to Mr. Falkowitz on March 23, 2016 rejecting Olympus's demand that Bracco rescind its improper termination of the Distribution Agreement.

28. Bracco has not sold or otherwise provided any "Products" to Olympus since it terminated the Distribution Agreement on March 15, 2016.

29. By reason of Bracco's termination of the Distribution Agreement, Olympus will be unable to supply its customers with polyp traps.

30. Section 14(d) of the Distribution Agreement provides as follows:

> Governing Law. The validity, interpretation, enforceability and performance of this Agreement (including with respect to any Product delivered hereunder) shall be governed and construed in accordance with the State of New York and the U.S. Federal laws applicable therein, without reference to or application of their choice of laws or conflict of laws provisions that would result in the application of any other laws. Each of parties hereto submits to the jurisdiction of the State and Federal courts located in the State of New York and hereby expressly agrees there is no jurisdiction other than the State of New York.

## FIRST CAUSE OF ACTION
### (against Bracco)

31. Olympus repeats the allegations of paragraphs 1 through 30, inclusive, of the verified complaint, with the same force and effect as if stated hereat.

32. The deferred prosecution agreements to which Bracco's termination letter refers concern misconduct that occurred between 2006 and 2011 in connection with the marketing and sale of endoscopy and other medical *equipment*.

33. Neither deferred prosecution agreement has anything to do with the marketing or sale of *accessories*, such as polyp traps, for that equipment.

34. Accordingly, the "Statement of Facts" upon which the deferred prosecution agreement against OCA is based provides, in part, as follows:

8

> Specifically, OLYMPUS sought to, and did, induce doctors, hospitals, and other health care providers to buy OLYMPUS products by giving them various types of remuneration, including grants, payments for travel and recreational activities, consulting payments, and gifts or no-charge loans of OLYMPUS equipment, some of which sold for $20,000 or more. In this fashion, OLYMPUS facilitated more than $600 million in sales of OLYMPUS *medical and surgical equipment – in particular, endoscopes* – making OLYMPUS more than $230 million in gross profits from those sales.

(Emphasis added.)

35. Likewise, the "Statement of Facts" upon which the deferred prosecution agreement against OLA is based states, in part, as follows:

> Beginning in or about 2006 and continuing until in or about August 2011, OLA's senior management designed and implemented a plan to increase *medical equipment* sales in Central and South America by providing personal benefits, including cash, money transfers, personal or non-Olympus medical education travel, free or heavily discounted equipment, and other things of value to certain health care practitioners ("HCPs") employed at government-owned and private health care facilities who could authorize or influence those facilities' decisions to purchase *Olympus equipment* and to prevent public institutions from purchasing or converting to the technology of competitors. During this time period, the primary manner that OLA used to deliver improper benefits to HCPs was by opening and directing excessive side benefits to "training centers" for targeted HCPs. Although one purpose of the A-3 training centers was to provide education and to encourage the development of minimally invasive procedures in the region, the primary manner that OLA implemented the training center program was to provide pecuniary benefits to pre-selected HCPs who were employed by public institutions or who sat on public tender boards.

(Emphasis added.)

36. A plain reading of the clear and unambiguous terms of the Distribution Agreement establishes that it prohibits only violations of laws, rules, and regulations with

9

respect to Olympus's purchase and distribution of the "Products" <u>that are the subject of the Distribution Agreement, *i.e.*, polyp traps</u>.

37. Section 5(a) of the Distribution Agreement provides, in relevant part, that "BRACCO and [Olympus] shall comply with all <u>*Applicable Laws*</u>, including without limitation those that apply to the marketing and sale of the Products . . . ."

38. Similarly, Section 5(b) of the Distribution Agreement provides, in relevant part, that "[Olympus] undertakes and agrees to comply at all times with <u>*Applicable Laws*</u>, including the U.S. Export Controls, with respect to the Products and any associated services . . . ."

39. "Exhibit A" to the Distribution Agreement defines "Applicable Laws" as "all Applicable Laws [sic], rules, regulations and guidelines within or without the Territory that may apply to the development, manufacturing, marketing, and/or sale of the <u>*Products*</u> in the Territory or the performance of either party's obligations under this Agreement, including laws, regulations and guidelines governing the import, export, development, manufacturing, marketing, distribution and sale of the <u>*Products*</u> in the Territory."

40. "Exhibit A" defines "Products" to mean "those products listed in Exhibit C," which, in turn, names two types of polyp trap: the "4 Chamber Polyp Trap" and the "Quick Catch."

41. The "Products" do not include the endoscopy and other medical equipment that was the subject of the two deferred prosecution agreements involving OCA and OLA.

42. The investigations into the misconduct that was the subject of the two deferred prosecution agreements were matters of public knowledge for many years.

43. During this time, Bracco supplied Olympus with polyp traps under the Distribution Agreement and never raised any kind of objection with Olympus.

10

44. Bracco's March 15, 2016 termination letter cited a second reason for terminating the Distribution Agreement, namely, that "Olympus has failed to provide any of the six (6) annual certificates required [by section 5(b) of the Distribution Agreement]."

45. Section 5(b) of the Distribution Agreement states, in relevant part, that "Within ten (10) days after each anniversary of this Agreement, [Olympus] shall provide the following certification to BRACCO, duly signed by the authorized officer of [Olympus]: 'Distributor hereby certifies to BRACCO DIAGNOSTICS INC. that for the year immediately preceding the date of this certificate, neither it nor any of its employees, representatives, or agents has engaged in or participated in any transaction or conduct prohibited by the Distribution Agreement between Distributor and BRACCO DIAGNOSTICS INC.'"

46. According to section 11(b) of the Distribution Agreement, where, as here, Bracco alleges Olympus is in material breach of the Distribution Agreement, Bracco "may give written notice to [Olympus] of the nature of the breach and shall provide thirty (30) days after the giving of such notice for the breach to be cured to the reasonable satisfaction of [Bracco]."

47. Bracco has no right to "immediately terminate" the Distribution Agreement until Olympus has had a thirty-day opportunity to cure.

48. In spite of this crystal clear mandate, Bracco gave Olympus no opportunity whatsoever to cure.

49. Instead, Bracco's termination was "immediately effective" and thus improper.

50. Olympus has not "engaged in or participated in any transaction or conduct prohibited by the Distribution Agreement," and so it could have supplied, and does supply, Bracco with certificates in the form and substance called for in section 5(b) of the Distribution Agreement.

11

51. Bracco's assertion that Olympus was in breach of Sections 5(a) and (b) of the Distribution Agreement based on the two deferred prosecution agreements entered into by OCA, Olympus' parent company, and OLA, a Latin American affiliate of OCA, is without merit.

52. Bracco's further assertion that Olympus was in breach of Section 5(b) of the Distribution agreement because "Olympus failed to provide any of the six (6) annual certificates required [by Section 5(b) of the Distribution Agreement]" also is without merit.

53. Bracco thereby wrongfully, and without any legitimate basis, terminated the Distribution Agreement.

54. Bracco's wrongful termination of the Distribution Agreement will severely impede Olympus' ability to sell its own endoscopy equipment to its end-user customers.

55. By reason of the foregoing, Olympus will suffer significant economic harm and damages that cannot be easily determined or calculated.

56. Olympus therefore has no adequate remedy at law.

### SECOND CAUSE OF ACTION
### (against Bracco)

57. Olympus repeats the allegations of paragraphs 31 through 56, inclusive, of the verified complaint with the same force and effect as stated hereat.

58. Bracco thereby breached the implied covenant of fair dealing inherent in all contracts, including the Distribution Agreement.

59. By reason of the foregoing, Olympus will suffer significant economic harm and damages that cannot be easily determined or calculated.

60. Olympus therefore has no adequate remedy at law.

## THIRD CAUSE OF ACTION
### (against Bracco)

61. Olympus repeats the allegations of paragraphs 57 through 60, inclusive, of the verified complaint with the same force and effect as stated hereat.

62. Olympus heretofore has performed, and remains ready, willing, and able to perform, its obligations under the Distribution Agreement.

63. Since March 15, 2016, Bracco has failed and refused to perform its obligations under the Distribution Agreement despite due demand therefor by Olympus.

64. By reason of the foregoing, Olympus will suffer significant economic harm and damages that cannot be easily determined or calculated.

65. Olympus therefore has no adequate remedy at law.

## FOURTH CAUSE OF ACTION
### (against Bracco)

66. Olympus repeats the allegations of paragraphs 61 through 65 of the verified complaint with the same force and effect as stated hereat.

67. Bracco thereby is in breach of the Distribution Agreement.

68. By reason of the foregoing, Olympus will suffer significant economic harm and damages that cannot be easily determined or calculated.

69. Olympus therefore has no adequate remedy at law.

## FIFTH CAUSE OF ACTION
### (against U.S. Endoscopy)

70. Olympus repeats the allegations of paragraphs 66 through 69, inclusive, of the verified complaint with the same force and effect as stated hereat.

71. At the time it acquired Bracco, U.S. Endoscopy was fully aware of the Distribution Agreement between Olympus and Bracco.

13

72. U.S. Endoscopy deliberately and improperly induced, encouraged and procured Bracco's wrongful termination and breach of the Distribution Agreement.

73. U.S. Endoscopy so acted for the express reason and purpose of preventing and/or impairing Olympus' ability to sell polyp traps and endoscopy equipment to its end-user customers, so that U.S. endoscopy could appropriate that business to itself.

74. By reason of the foregoing, Olympus will suffer significant economic harm and damages that cannot be easily determined or calculated.

75. Olympus therefore has no adequate remedy at law.

### SIXTH CAUSE OF ACTION
### (against Bracco and U.S. Endoscopy)

76. Olympus repeats the allegations of paragraphs 70 through 75, inclusive, of the verified complaint with the same force and effect as stated hereat.

77. Bracco and U.S. Endoscopy acted in concert with respect to their conduct complained of herein, aiding and abetting each other, for the express reason and purpose of impairing Olympus' ability to sell polyp traps and endoscopy equipment to its end-user customers, so that U.S. endoscopy could appropriate that business to itself.

78. By reason of the foregoing, Olympus will suffer significant economic harm and damages that cannot be easily determined or calculated.

79. Olympus therefore has no adequate remedy at law.

### SEVENTH CAUSE OF ACTION
### (against Bracco and U.S. Endoscopy)

80. Olympus repeats the allegations of paragraphs 76 through 79, inclusive, of the verified complaint with the same force and effect as stated hereat.

81. Bracco and U.S. Endoscopy engaged in the conduct complained of herein willfully, wrongfully, intentionally, and for the express reason and purpose of causing significant

economic harm to Olympus while concomitantly providing significant economic benefit to U.S. Endoscopy.

82. By reason of the foregoing, Olympus will suffer significant economic harm and damages that cannot be easily determined or calculated.

83. Olympus therefore has no adequate remedy at law.

WHEREFORE, Olympus demands judgment against Bracco and U.S. Endoscopy as follows:

1. Directing Bracco and/or U.S. Endoscopy to sell "Products" (as defined in the Distribution Agreement) to Olympus in accordance with the Distribution Agreement;

2. Awarding Olympus damages in an amount hereafter to be determined sufficient to compensate Olympus for, *inter alia*, lost profits and loss of business by reason of the wrongful termination of the Distribution Agreement;

3. Awarding Olympus punitive damages; and

4. Awarding Olympus such other and further relief as the Court deems just and proper.

Dated:  Garden City, New York
        March 31, 2016

> MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
>
> By: _____s/ Daniel B. Rinaldi_____
>     Daniel B. Rinaldi
> 990 Stewart Avenue, Suite 300
> P.O. Box 9194
> Garden City, New York 11530-9194
> (516) 741-6565
> *Attorneys for Plaintiff Olympus America Inc.*

15

## VERIFICATION

STATE OF PENNSYLVANIA )
) ss.:
COUNTY OF LEHIGH )

EARL ADAMY, being duly sworn, deposes and says:

I am the Executive Director of Marketing for Olympus Corporation of the Americas, the parent company of the plaintiff, Olympus America Inc. I have read the foregoing verified complaint; the same is true and correct of my own knowledge, except as to the matters therein stated to be alleged upon information and belief; and, as to those matters, I believe them to be true.

_____
EARL ADAMY

Sworn to before me this
31st day of March, 2016

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DORIS L HAMM
Notary Public
UPPER SAUCON TWP., LEHIGH CNTY
My Commission Expires Sep 3, 2017

1110617

16